## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARK BUILDERS CORP.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:14-CV-01551** |
| | : | **(JUDGE MARIANI)** |
| **MINERSVILLE AREA SCHOOL** | : | |
| **DISTRICT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

This case concerns a dispute between the Minersville Area School District ("MASD"),

various school officials, and ARK Builders Corporation ("ARK"), a construction company

contracted by MASD to complete a roofing project at the Minersville Area High School and

Elementary School in 2012. (Compl., Doc.1 at 5).

On August 7, 2014, Plaintiffs Adnan Khan and ARK filed a Complaint (Doc. 1) in the

above-captioned matter, naming as defendants MASD, Carl McBreen, James Grabusky,

Albert Wank, Gretchen Ulmer, Albert Marazas, Robert Keifer, and Eugene Demcher.

Plaintiff's Complaint sets forth four counts: racial discrimination in violation of 42 U.S.C. §

1981 (Count I); breach of contract (Count II); violations of Pennsylvania's Prompt Payment

Act (Count III); and unjust enrichment (Count IV).  Count I was brought by both Plaintiff

Adnan Khan and Plaintiff ARK against all Defendants, while the remaining Counts were

brought solely by ARK solely against MASD. On October 21, 2014, Plaintiff Khan

voluntarily dismissed his § 1981 claim against the Defendants. (See Notice of Dismissal,

Doc. 19).

Presently before the Court is Defendants MASD, Carl McBreen, James Grabusky,

Albert Wank, Gretchen Ulmer, Albert Marazas, Robert Keifer, and Eugene Demcher's

Motion to Dismiss Plaintiff's Complaint (Doc. 23). Defendants filed their Motion on

November 4, 2014 and based it upon the interaction between forum selection clauses and

the doctrine of forum non conveniens. The same day, Defendants also filed the following

two counterclaims against ARK: breach of contract (Count I); and Indemnification (Count II).

(See Defendants' Answer, Affirmative Defenses, and Counterclaim, Doc. 24). The parties

have briefed the Motion to Dismiss, and it is now ripe for decision. For the reasons set forth

below, the Court will grant Defendants' Motion.

## II. STANDARD OF REVIEW

Defendants' motion is not filed pursuant to Federal Rule of Civil Procedure 12, but

instead is based on the doctrine of forum non conveniens. (Doc. 23 at 1 n.1). The United

States Supreme Court has held that "the appropriate way to enforce a forum-selection

clause pointing to a state or foreign forum is through the doctrine of forum non conveniens."

Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 580 (2013).

Thus, "[t]he sole issue to be decided is whether venue of this matter appropriately resides

with this Court," and the familiar standards for dismissal for failure to state a claim under

2

Federal Rule 12(b)(6) do not come into play. *KNL Construction, Inc. v. Killian Construction Co., Inc.*, No. 3:14-CV-412-UN2, 2014 WL 1671959, at *1 (M.D. Pa. Apr. 28, 2014).

The *forum non conveniens* doctrine "entail[s] the same balancing-of-interests standard" as 28 U.S.C. § 1404(a), the section of the U.S. Code allowing for transfer of civil actions from one U.S. District Court or division of such court to another. *Atl. Marine*, 134 S. Ct. at 580. A motion to transfer venue under § 1404(a) requires the Court to weigh various factors related to the convenience of the parties and to the public interest to decide whether transfer of venue is appropriate. *Id.* at 581; *see also id.* at 581 n.6 (enumerating some of the relevant private and public interest considerations). But, where there is a valid forum selection clause, the § 1404(a) and *forum non conveniens* analyses[1] change in three ways, *id.* at 581, two of which are relevant when the forum selection clause points to a non-federal forum.[2] First, the weight ordinarily given to the Plaintiff's choice of venue – that is, the forum in which it filed the civil action – disappears and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court should "deem the private-interest factors to weigh entirely in favor of the preselected forum" and "should not consider arguments about the parties' private interests." *Id.* at 582. Rather, the "Court may only consider public interest factors." *Amazon Produce*

---

[1] "Courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 580.

[2] The third change to the § 1404(a) analysis concerns the carryover of choice-of-law rules from the transferor court to the transferee court. *Atl. Marine*, 134 S. Ct. at 582-83. Because this motion arises under the *forum non conveniens* doctrine and not § 1404(a), making dismissal the only possible result of a successful motion, *id.* at 583 n.8, this change is irrelevant to the case at bar.

3

*Network, LLC v. NYK Line*, No. CV 15-952, 2015 WL 5568386, at \*2 (E.D. Pa. Sept. 21, 2015) (citing *Atl. Marine*, 134. S. Ct. at 581-83). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 134 S. Ct. at 581 (internal alternation omitted).

In *Atlantic Marine*, a unanimous United States Supreme Court was unequivocal about the strictures governing a federal district court's treatment of a valid selection clause. Whether that clause points to a federal or nonfederal forum, "a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S.Ct at 582 (internal citation omitted). Thus, the application of *Atlantic Marine* and the doctrine of *forum non conveniens* becomes relatively *pro forma* where parties have contractually selected a forum other than the one in which the action is pending. The *Atlantic Marine* analysis, however, is predicated on the existence of a *valid* forum selection clause. *Id*. at 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). Thus, in deciding whether the doctrine of *forum non conveniens* requires the Court to dismiss this matter, the Court must first be satisfied as to the validity of the underlying contract, including its forum selection clause. *See Untitled 3, LLC v. Apex Energy Grp., LLC*, No. 2:15-CV-164, 2015 WL 2169770, at \*3 (W.D. Pa. May 8, 2015) ("The issue now before the Court is twofold: First, is the forum selection clause valid? Second, if it is valid, should the Court enforce the clause and transfer the case to

4

Indiana? If the first answer is yes, *Atlantic Marine* mandates the second question also be answered affirmatively in all but the most exceptional cases.").

## III. ANALYSIS

### A. Validity and Construction of the Forum Selection Clause

"The construction of contracts is usually a matter of state, not federal, common law," *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986), and thus the Court must be satisfied that the contract is valid under Pennsylvania state law[3] before applying *Atlantic Marine*. Here, there can be no question that a valid contract exists; indeed, both Plaintiff and Defendants bring breach of contract claims: "the face of the Complaint requests relief that presupposes a valid contract." *Untitled 3, LLC*, 2015 WL 2169770, at *3. There is no question that the parties have entered into a contract and "a forum selection clause in a commercial contract between business entities is presumptively valid." *Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*, 9 A.3d 1207, 1212 (Pa. Super. 2010). Furthermore, in entering into this contract, Plaintiff availed itself of the public bidding process for schools laid out in 24 P.S. § 7-751, a process that Defendant MASD was legislatively required to use in letting a contract for roof repair of its buildings. And,

> [i]t is a frequently repeated rubric, scarcely needing repetition, that a statute must be construed to effect the intent of the Legislature. Bidding

---

[3] The contract includes a choice-of-laws clause in Article 17, Section 17.05, stating "[t]his Contract is to be governed by the law of the state in which the Project is located." (Doc. 1, Ex. 2 at 80). The roofing project was indisputably located within the Commonwealth of Pennsylvania. "Neither party has alleged that this choice of law provision is invalid or inapplicable. *See Neely v. Club Med Mgmt. Servs.*, 63 F.3d 166, 180 & n.10 (3d Cir. 1995) (en banc) (concluding that "choice of law issues may be waived.")." *Dawes v. Publish America*, 593 App'x. 117, 119 n.5 (3d Cir. 2014).

requirements 'are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest.'

*Yohe v. City of Lower Burrell*, 208 A.2d 847, 850 (Pa. 1965) (internal citation omitted).

Given this strong statement of public policy, and particularly where Plaintiff has made no allegations that Defendant MASD violated its statutory obligations with respect to the bidding process, the Court will decline to turn the public bidding process on its head. "It is a deeply imbedded general principle of contract law that the validity of a contract is to be determined as of the time it is made," *Jones v. Mgmt. & Computer Servs., Inc.*, 976 F.2d 857, 860 (3d Cir. 1992); when Plaintiff entered into this contract, it did so freely and could have declined to do so if it was uncomfortable with the terms. This is true despite ARK having been named the lowest responsible bidder as a result of the bid process. *Wayne Crouse, Inc. v. Sch. Dist. of Borough of Braddock*, 19 A.2d 843, 844 (1941) ("When a municipal body advertises for bids for public work and receives what appears to be a satisfactory bid, it is within the contemplation of both bidder and acceptor that no contractual relation shall arise therefrom until a written contract embodying all material terms of the offer and acceptance has been formally entered into.").

While this Court understands Plaintiff's state law arguments in its Opposition Brief to go to *enforcement* of, rather than validity or interpretation of, the forum selection clause, to

6

the extent that Plaintiff argues the clause is invalid because the contract is one of adhesion

or because there was no separate consideration for the forum selection clause, the Court

finds these arguments unpersuasive.  First, this Court is not convinced that the contract

between ARK and MASD was indeed a contract of adhesion, but – if it was – it was a

legislatively-sanctioned one.  As discussed above, the statutory requirement that MASD let

the contract for the roof project by bid is undergirded by important public policy

considerations which do not include the benefit of the bidder.  *Yohe*, 208 A.2d at 850.

Furthermore, "merely because a contract is one of adhesion does not render it

unconscionable and unenforceable as a matter of law."  *Salley v. Option One Mortgage

Corp.*, 925 A.2d 115, 127 (Pa. 2007).  Secondly, "consideration for the contract as a whole

will be presumed to have provided consideration for the forum selection clause" under

Pennsylvania state law.  *Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant*, 915

A.2d 647, ¶15 (Pa. Super. 2006); *see Cent. Contracting Co. v. C. E. Youngdahl & Co.*, 209

A.2d 810, 816 (Pa. 1965) (in a discussion of *enforcement* of a forum selection clause, noting

that "it may be assumed that the plaintiff received under the contract consideration" for the

inconvenience or additional expense of litigating in the selected forum).

Continuing to apply Pennsylvania law, this Court must interpret the valid forum

selection clauses to determine their scope.  *Martinez v. Bloomberg LP*, 740 F.3d 211, 218

(2d Cir. 2014) ("[I]f we are called upon to determine whether a particular forum selection

clause is mandatory or permissive . . . or whether its scope encompasses the claims or

7

parties involved in a certain suit, we apply the law contractually selected by the parties.").

The contract contains two forum-selection clauses. Article 10, Section 10.8 of the contract

reads:

> The parties hereto consent to the exclusive jurisdiction of the Court of
> Common Pleas of the county in which the contract work is taking place, with
> respect to any dispute which may arise in connection with this Agreement or
> the enforcement thereof unless the parties mutually agree in writing to
> another form of dispute resolution.

(Doc. 1, Ex. 2 at 8). Supplementary Conditions, Section SC-16.01.A reads:

> Unless otherwise agreed in writing arbitration between Owner and Contractor
> will not be considered as a method of resolution of any dispute. All matters or
> claims by Contractor not settled by negotiations with Owner shall be settled
> by filing in the County Court of Common Pleas in which the work is being
> done.

(Doc. 1, Ex. 2 at 90). The Parties agree that the "county" referred to in the forum-selection

clauses is Schuylkill County. (*See* Plaintiff's Memorandum of Law in Opposition to

Defendants' Motion to Dismiss, Doc. 34 at 3).

"When a writing is clear and unequivocal, its meaning must be determined by its

contents alone. It is not the function of this Court to re-write it, or to give it a construction in

conflict with the accepted and plain meaning of the language used." *WMI Grp., Inc. v. Fox*,

109 A.3d 740, 749 (2015). The use of the words "exclusive jurisdiction," "all," "any," and

"shall" make clear that the clauses contemplate *only* the Court of Common Pleas of

Schuylkill County. Plaintiff's argument that its racial discrimination claim under 42 U.S.C. §

1981 falls outside of the terms of the contract is unpersuasive. In the Court's view,

8

Plaintiff's racial discrimination claim is a claim on the contract.  Plaintiff's theory is

essentially that the contract between the parties was breached with discriminatory intent.

Indeed, the racial discrimination claims and state law claims are intertwined to the point

where it would be unworkable for this Court to retain the § 1981 claim while dismissing the

others.  This view is grounded in Pennsylvania law:

> We think, case law demonstrates a principle that pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms. [Holding otherwise] would permit avoiding a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum. Adopting [such a theory] runs counter to the law favoring forum selection clauses . . . .

*Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*, 9 A.3d 1207, 1212 (Pa. Super. 2010)

(internal alterations omitted) (citing *Crescent Intern., Inc. v. Avatar Communities, Inc.*, 857

F.2d 943, 944-45 (3d Cir. 1988), and concluding that its holding "is an accurate statement of

the law in Pennsylvania.").

## B. Enforcement of the Forum Selection Clause

As it is directed to do by *Atlantic Marine*, this Court now turns to federal law to

evaluate the enforceability of the forum selection clauses at issue.  Under *Atlantic Marine*, "a

district court may consider arguments about public-interest factors only.  Because those

factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses

should control except in unusual cases."  *Atl. Marine*, 134 S.Ct at 582 (internal citation

omitted).  The public-interest factors contemplated by the Supreme Court include "the

9

administrative difficulties flowing from court congestion; the local interest in having localized

controversies decided at home; and the interest in having the trial of a diversity case in a

forum that is at home with the law." *Id.* at 581 n.6 (alteration omitted). As stated by the

Third Circuit, potential public-interest factors include:

> the enforceability of the judgment; practical considerations that could make
> the trial easy, expeditious, or inexpensive; the relative administrative difficulty
> in the two fora resulting from court congestion; the local interest in deciding
> local controversies at home; the public policies of the fora; and the familiarity
> of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

Plaintiff has failed to "bear the burden of showing that public-interest factors

overwhelmingly disfavor [dismissal]."[4] *Atl. Marine*, 134 S. Ct. at 583. According to Plaintiff,

> the Honorable Court should consider the desirability for uniform and
> consistent interpretation of the federal civil rights statutes, expertise of federal
> judges (as opposed to state judges) regarding federal civil rights laws, and
> the great hospitality of the federal courts to rule upon federal causes of action.

(Doc. 34 at 14). With these stock phrases, the Plaintiff has made little, if any, attempt to

address the public interest factors typically associated with the enforcement of forum

selection clauses in federal court.[5] Indeed, some of the factors enumerated in *Atlantic*

---

[4] "A successful motion under *forum non conveniens* requires dismissal of the case." *Atl. Marine*, 134 S. Ct. at 583 n.8 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "[D]ismissal . . . work[s] no injustice on the plaintiff," because such a plaintiff "has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *Atl. Marine*, 134 S. Ct. at 583 n.8.

[5] Plaintiff's public interest arguments center around its § 1981 claim and this Court's purported solicitousness of such a claim. But as stated above, the Court views this federal claim as a claim on the contract itself; separating it from the state law claims would be unworkable. Additionally, the Schuylkill County Court of Common Pleas has concurrent jurisdiction with this Court over a federal § 1981 claim and this Court does not doubt its ability to competently and fairly handle Plaintiff's case. *See generally, Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981).

*Marine* and *Jumara*, particularly the local interest factor and the factor related to the public policies of both the fora in question, weigh heavily in favor of enforcement. Coupling these factors with the private interest factors, which the Court "must deem . . . to weigh entirely in favor of the preselected forum," *Atl. Marine*, 134 S. Ct. at 582, the Court finds that this case is not the "exceptional" or "unusual" one where the public interest is significant enough to overcome the contractually-selected forum. The Court will enforce the forum selection clause and dismiss this case.

While not integral to the disposition of this case, the Court finds it prudent to offer a brief treatment of Plaintiff's main argument in opposition to Defendants' Motion to Dismiss. (*See* Doc. 34 at 3-7). It appears to this Court that in Plaintiff's briefing, Plaintiff "blur[red] the distinction between enforceability and interpretation" or validity. *Martinez v. Bloomberg LP*, 740 F.3d 211, 222 (2nd Cir. 2014). As a result, citing the choice-of-laws clause of the contract, Plaintiff argues that this Court should apply Pennsylvania law to find that the forum selection clause is unenforceable. However, the Third Circuit has held that federal law controls on "questions of venue and the enforcement of forum selection clauses [because they] are essentially procedural, rather than substantive, in nature," *Jumara*, 55 F.3d at 877. It is the Court's view that *Atlantic Marine* forecloses any remaining, reasonable argument that this Court can or must apply state law with respect to enforceability.

Even if state law were to apply, the Court would still find the forum selection clause enforceable. Pennsylvania law, the body of law which governs the contract between

Plaintiff and Defendant, follows "the modern trend [] to uphold the enforceability of forum selection clauses where those clauses are clear and unambiguous." *Patriot Commercial Leasing Co. v. Kremer Rest. Enterprises, LLC*, 915 A.2d at 650. Thus,

> a forum selection clause in a commercial contract between business entities is presumptively valid and will be deemed unenforceable only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause is found to violate public policy.

*Id.* at 651. For the reasons already discussed, Plaintiff's case does not meet the Pennsylvania standards necessary to over the presumptive validity of the contract's forum selection clause. First, Plaintiff has made no allegations of fraud or of other unconscionable action on the part of Minersville. To the extent that Plaintiff argues there was a lack of consideration for the contract or that it was a contract of adhesion, the Court has already addressed these issues above. Second, the Schuylkill County Court of Common Pleas, the forum selected in the clause, is not so unfair or inconvenient such that either a party will be deprived of an opportunity to be heard. Indeed, it would be absurd to hold that while it was evidently convenient for Plaintiff to do construction work in Schuylkill County, it is now so inconvenient to litigate there that Plaintiff will be deprived of its day in court. And third, as a matter of public policy, this Court must return to the fact that this was a contract that was legislatively-required to be bid-for. If Plaintiff truly believed that the forum selection clauses "result[ed] from careless drafting and hurried compilation of a large set of bid documents on a public job," (Doc. 34 at 8), it was under no obligation to agree to them.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (Doc.
23).  A separate Order follows.

Robert D. Mariani
United States District Judge